IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HOST AMERICA CORPORATION, a Connecticut corporation,<br><br>      Plaintiff,<br><br>vs.<br><br>COASTLINE FINANCIAL, INC., an Arizona corporation,<br><br>      Defendant. | ORDER AND MEMORANDUM DECISION<br><br><br><br>Case No. 2:06-CV-5 |

  Host America Corporation filed this action seeking a declaration that its security interest in goods owned by K.W.M. Electronics Corporation ("KWM") has priority over Coastline Financial, Inc.'s lessor's lien, which attached to the same goods. Host America moved for summary judgment, claiming that its interest is superior to Coastline's because either (1) Host America's security interest was perfected before Coastline's lessor's lien, or (2) Host America has perfected its security interest while Coastline has yet to perfect its lessor's lien.

  Coastline opposed Host America's summary judgment motion and moved for partial summary judgment on the issue of perfection. Coastline argues that it perfected its lessor's lien no later than the fall of 2006 and that the security interest upon which Host America relies was not perfected at that time because the financing statement filed in connection with that security interest listed an incorrect debtor's name, rendering the financing statement "seriously misleading" and precluding perfection. Coastline additionally requested a continuance under

rule 56(f) of the Federal Rules of Civil Procedure, claiming that issues relating to the enforceability of Host America's security interest have yet to be resolved and that a summary judgment resolving the entire dispute between the parties is therefore inappropriate.

As detailed below, the undisputed material facts establish that the initial financing statement filed in connection with Host America's security interest was seriously misleading. Although Host America has since attempted to correct the initial financing statement in an effort to ensure perfection of its security interest, the court concludes that Coastline perfected its lessor's lien before Host America undertook its corrective actions.  Accordingly, the court concludes that Coastline's lessor's lien has priority over Host America's security interest.

## Undisputed Facts

KWM, a manufacturer and assembler of electronic goods, leased space for its corporate facilities from Coastline.  In late spring of 2001, KWM entered into a financing arrangement with Washington Mutual Bank.  Pursuant to that agreement, KWM provided Washington Mutual with two security interests in certain collateral.  Washington Mutual assigned those security interests to Coastline in the fall of 2002.

Desiring to wind up the financing obligations represented by the Coastline security interests, KWM sought alternative financing.  As part of that process, KWM paid off the Coastline obligations and Coastline terminated the two financing statements evidencing its security interests.  Around the same time, KWM granted Burton M. Sack a security interest in certain collateral.  On May 12, 2003, Mr. Sack filed a financing statement to provide notice of his  security interest and to perfect that interest.  The financing statement listed the debtor as "K W M Electronics Corporation."

In the late summer of 2004, Coastline initiated an unlawful detainer action against KWM

in the Third District Court for the State of Utah. Coastline initiated the action after KWM failed to pay rent. Utah law provides that "[l]essor's shall have a lien for rent due upon all nonexempt property of the lesee brought or kept upon the leased premises so long as the lesee shall occupy said premises and for thirty days thereafter." Utah Code Ann § 38-3-1. Accordingly, Coastline sought a writ of attachment, which it received on September 30, 2004, and ultimately obtained a default judgment against KWM on November 19, 2004. Coastline's lessor's lien attached to the goods identified as collateral in Mr. Sack's financing statement.

After obtaining the default judgment, Coastline seized the goods. But Host America, which had an ongoing business relationship with KWM, initiated legal action, claiming that it was the rightful owner of the seized goods. In that related proceeding, the court granted Host America's request for a preliminary injunction and allowed Host America to take possession of the goods. (See Host America Corp. v. Coastline Fin. Inc., Civ. No. 2:04CV879, Findings of Fact and Conclusions of Law and Memorandum Decision 2, dkt. #121.) But after a bench trial, the court concluded that Coastline was the rightful owner of the goods. (See id. at 9.)

While that proceeding was pending, on December 9, 2005, Host America acquired the debt and the security interest held by Mr. Sack. On December 22, 2005, Host America filed a financing statement in connection with that debt and security interest, listing the debtor as "K. W. M. Electronics Corporation." On January 3, 2006, Host America filed the present action, claiming that its recently acquired security interest has priority over any lien held by Coastline. Two days later, Host America filed an additional financing statement in connection with the debt and security interest it acquired from Mr. Sack. That financing statement listed the debtor as "K.W.M. Electronics Corporation."

The key issue in the motions presently before the court is whether the security interest

3

that Host America acquired from Mr. Sack has priority over Coastline's lessor's lien.

**Standard of Review**

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." Liberty Lobby, 477 U.S. at 252. See also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.").

**Analysis**

Host America advances two arguments in support of its motion for summary judgment. First, Host America argues that Mr. Sack perfected his security interest when he filed the May 2003 financing statement. Because Mr. Sack's financing statement was filed well before Coastline attempted to foreclose on its lessor's lien, Host America contends that the security interest it acquired from Mr. Sack has priority. Second, and alternatively, Host America asserts that its security interest is superior to Coastline's lessor's lien because Host America perfected its security interest no later than January 5, 2006, the date on which it filed its most recent financing

statement, and Coastline has yet to perfect its lessor's lien.

The court concludes that the financing statement filed by Mr. Sack in May of 2003 failed to sufficiently list the name of the debtor.  Additionally, the court concludes that the financing statement was seriously misleading because a search of the state's records, conducted using filing office's standard search logic, would not have revealed the financing statement.  As a result, the financing statement filed by Mr. Sack failed to perfect his security interest.  Further, it is immaterial whether Host America eventually managed to cure the deficiency present in Mr. Sack's financing statement because Coastline perfected its lessor's lien well before Host America made such an attempt.  The court will address each issue in turn.

I.  Mr. Sack's May 2003 Financing Statement Was Seriously Misleading

Host America concedes that the financing statement Mr. Sack filed in May of 2003 did not provide KWM's correct name.  The question before the court is whether the failure to list KWM's correct name on the financing statement rendered that statement "seriously misleading."  If so, Mr. Sack's security interest remained unperfected until well after the time Coastline foreclosed its lessor's lien.

"The purpose behind the filing provisions is to provide notice to subsequent creditors in a manner which will give such creditors confidence that they are aware of any prior security interests in the collateral that may be superior to their own interest." Pearson v. Salina Coffee House, Inc., 831 F.2d 1531, 1536 (10th Cir. 1987).  If a financing statement fails to provide adequate notice to subsequent creditors, the Utah Uniform Commercial Code will not allow the security interest evidenced by that filing to have priority over a subsequently perfected security interest.  See Diversified Holdings, L.C. v. Turner, 2002 UT 129, ¶ 42, 63 P.3d 686.  "Because notice of a secured interest in property is accomplished by searching the debtor's name, the

5

requirement that a financing statement provide the debtor's name is particularly important." Clark v. Deere & Co. (In re Kinderknecht), 308 B.R. 71, 74 (10th Cir. B.A.P. 2004)**.**  Given the importance of the debtor's name, it should come as no surprise that a failure to adequately provide that name will render a financing statement "seriously misleading."  See Utah Code Ann. § 70A-9a-506.

Two sections of the Utah Uniform Commercial Code are relevant to determining whether Mr. Sack's May 2003 financing statement was seriously misleading: Utah Code section 70A-9a-503 and section 70A-9a-506.  Both of these provisions were adopted by the Utah State Legislature during its 2000 session.  See Utah Code Ann. §§ 70A-9a-503 & 70A-9a-506 (2001).  The statutes are, in all relevant aspects, identical to revisions proposed by the National Conference of Commissioners on Uniform State Laws in 1998.  See In re Kinderknecht, 308 B.R. at 74.  The revisions "require[] more accuracy in filings, and place[] less burden on the searcher to seek out erroneous filings."  In re Summit Staffing Polk County, Inc., 305 B.R. 347, 354 (M.D. Fla. 2003).  "Prior to that time, courts struggled with whether names, such as trade names, in a financing statement sufficiently provided the name of the debtor.  [The revisions were] meant to 'clarify when a debtor's name is correct and when an incorrect name is insufficient.'"  In re Kinderknecht, 308 B.R. at 74-75 (quoting Official Uniform Commercial Code Comment 4.h).

When interpreting statutes, the court's "primary goal . . . is to give effect to the legislative intent, as evidenced by the plain language, in light of the purpose the statute was meant to achieve.  Foutz v. City of S. Jordan, 2004 UT 74 ¶ 11, 100 P.3d 1171 (internal quotation omitted).  Accordingly, the court first turns to the plain language of the relevant statutes.

Section 70A-9a-503(1) provides that "[a] financing statement sufficiently provides the

name of the debtor: (a) if the debtor is a registered organization, ***only*** if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization . . . ." Utah Code Ann. § 70A-9a-503(l)(a) (emphasis added).  Section 70A-9a-506 states that, "[e]xcept as provided in Subsection (3)*, a financing statement **that fails sufficiently to provide the name of the debtor in accordance with Subsection 70A-9a-503(1) is seriously misleading.*** Id. § 70A-9a-506(2) (emphasis added).

Subsection (3) of the same statute provides an "escape hatch" for creditors that fail to strictly comply with the Utah Code's requirement that the creditor of a registered organization list the name of that organization as it appears on the public record:

> If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with Subsection, 70A-9a-503(1), the name provided does not make the financing statement seriously misleading.

Id. § 70A-9a-506(3).

Interestingly, the parties do not agree on KWM's correct name and therefore diverge on the question of what name would need to be listed on the financing statement to satisfy section 70A-9a-503(1).  Host America contends that the public record lists KWM as "K. W. M. Electronics Corporation," with spaces between the periods; Coastline asserts that KWM's correct name is "K.W.M. Electronics Corporation," with no spaces between the periods.  But the parties' dispute is immaterial because the financing statement filed by Mr. Sack failed to use any periods at all, and instead listed the debtor as "K W M Electronics Corporation."  As mentioned, Host America concedes that by failing to indicate the presence of periods, Mr. Sack's financing statement did not comply with the requirements of section 70A-9a-503(1) of the Utah Code.

The plain language of section 70A-9a-506(2) dictates that Mr. Sack's failure to comply

with the requirements of section 70A-9a-503(1) rendered his financing statement "seriously misleading" unless saved by the escape hatch provision of subsection (3). In other words, if a search under KWM's correct name, using the filing office's standard search logic, would have revealed Mr. Sack's security interest, then the Utah Code would not consider Mr. Sack's financing statement "seriously misleading." See id. § 70A-9a-506(3).

The parties provided the court with extensive information about the search logic used by the state's filing office, including multiple declarations from Kathy Berg, the director of the Division of Corporations and Commercial Code. The evidence is undisputed that a search under KWM's correct name using the filing office's standard search logic would not have revealed Mr. Sack's security interest at any point in time before Coastline seized the goods as part of its foreclosure activities. As a result, the conclusion seems foregone that the escape hatch provision of subsection (3) is not available to Host America.

What complicates that conclusion is that, until recently, the filing office's standard search logic was not capable of compensating for even minor errors in a debtor's name. As a result, Host America claims that the escape hatch provided by subsection (3) was completely illusory at the time Mr. Sack filed his financing statement. In essence, Host America argues that the limitations of the state filing office's search logic improperly eviscerated a creditor protection that the legislature intended to provide.

Although sympathetic with Host America's position, the court concludes that the historical limitations of the state's filing office--though severe indeed--do not excuse Mr. Sack's failure to comply with section 70A-9a-503(1). The plain language of section 70A-9a-506(3) establishes an escape hatch to creditors who list an improper debtor name only to the extent that the state's standard search logic can compensate for that error. By necessity, the breadth of the

safe haven provided by section 70A-9a-506(3) will either expand or contract as the capabilities of the state's standard search logic change over time. The escape hatch provision is expressly tied to the state's search logic and allows no leeway for financing statements that remain undiscovered due to a creditor's failure to comply with section 70A-9a-503(1).

This is so even when, as here, a search under the debtor's correct name, using the filing office's standard search logic, fails to retrieve financing statements with relatively minor errors. The Utah Uniform Commercial Code, as it now stands, provides this court with no guidance on how to determine if a debtor's name is seriously misleading, other than referencing the filing office's standard search logic. Cf. Clark 308 B.R. at 75 ("The intent to clarify when a debtor's name is sufficient shows a desire to foreclose fact-intensive tests, such as those that existed under the former Article 9 of the UCC, inquiring into whether a person conducting a search would discover a filing under any given name. Requiring a financing statement to provide a debtor's legal name is a clear cut test that is in accord with that intent.") In short, the legislature elected to leave the fate of those creditors that fail to comply with the strict naming requirement of section 70A-9a-503(1) in the hands of those that develop and manage the filing office's search logic. See Note, Good Technology and Bad Law: How Computerization Threatens Notice Filing Under Revised Article 9, Meghan M. Sercombe, 84 Tex. L. Rev. 1065, 1068 (March 2006) ("[T]he drafters of the revised Article 9 opted for a bright-line rule, rejecting any language that would have measured validity against principles of fairness or equity.").

Following the plain language of the relevant statutes, the court concludes that Mr. Sack's May financing statement was seriously misleading and that his security interest was therefore unperfected at the time Coastline began foreclosing on its lessor's lien.

II.  Coastline Perfected Its Lessor's Lien Before Host America Filed New Financing Statements

Host America argues that even if the May financing statement was seriously misleading, it has now filed a sufficient financing statement, perfecting its interest.  Host America also contends that Coastline has yet to perfect its lessor's lien and, as a result, Host America's newly perfected security interest has priority over Coastline's lessor's lien.  The court disagrees and concludes that Coastline perfected its lessor's lien before Host America's attempts to correct Mr. Sack's financing statement.

As an initial matter, the court notes that it is not clear when a lessor's lien is "perfected." The statutes in the Utah Code governing lessor's liens do not use the term "perfection," and case law has not unequivocally addressed the issue.  The only relevant Utah Supreme Court pronouncement is found in Citizens Bank v. Elks Building, N.V., 663 P.2d 56, 58 (Utah 1983). In Citizens Bank, the court noted that the statutes governing lessor's liens "permit the lessor to file a complaint against the lessee, request a writ of attachment, and execute on the writ."  Id. The court went on to state that if the lessor in that case had taken the statutory steps, "its statutory lien would have been perfected, and it would have been prior to the Bank's security interest."  Citizens Bank thus indicates that a lessor's lien is "perfected" when the lessor has completed each of the outlined statutory steps.  The opinion also indicates that a perfected lessor's lien will have priority over any subsequently perfected security interest.

Here, Coastline filed a complaint and received a prejudgment writ of attachment. Coastline then seized the property in question, but did not hold a sale.  While there may be some argument that "execution" of the writ includes conducting a sale, the court concludes that Coastline did everything possible to perfect its lien.  Host America initiated legal action after Coastline seized the goods and short-circuited Coastline's ability to sell those goods.

10

Although not expressly raised, Host America implies that it is immaterial whether Coastline perfected its lessor's lien because Host America's security interest would trump that lien in any event.  Host America cites the Utah Court of Appeals's decision in <u>Webb v. Ninow</u>, 883 P.2d 1365 (Utah Ct. App. 1994), to support its position.  In <u>Webb</u>, the lessor argued that its lessor's lien attached at the time the tenant moved certain goods onto the rental property and that its lessor's lien therefore attached before a competing secured creditor's security interest was perfected.  The court stated: "The plain language of section 38-3-2 states that a lessor's lien <u>does not</u> have priority over a perfected security interest.  It in now way limits the phrase 'perfected security interests' to 'security interests perfected before the lessor's lien attaches.'"  <u>Id.</u> at 1367.

Host America argues, under the rationale of <u>Webb</u>, that even if its security interest remained unperfected until January of 2006, it is still statutorily preferred to Coastline's lessor's lien.  But <u>Webb</u> is distinguishable.  In <u>Webb</u>, the lessor was attempting to trump a perfected security interest by arguing that its own lien <u>attached</u> when goods were brought onto the rental property.  That case did not involve the question present in this case: whether a "perfected" lessor's lien trumps a subsequently perfected security interest.  The court reads the Utah Supreme Court's opinion in <u>Citizens Bank</u> as answering that question in the affirmative.

## Conclusion

The financing statement filed by Mr. Sack in May of 2003 was seriously misleading because it failed to provide the correct name of the debtor and a search under the debtor's correct name, using the filing office's standard search logic, would not have revealed the financing statement.  Coastline perfected its lessor's lien before Host America took steps to remedy the deficiency of Mr. Sack's financing statement.  Accordingly, Coastline's lessor's lien has priority over Host America's security interest.  Therefore, Host America's Motion for Summary

Judgment is DENIED, Coastline's Motion for Partial Summary Judgment is GRANTED, Coastline's Rule 56(f) Application for Continuance to Permit Discovery is DENIED as moot, and Host America's Motion for Judicial Notice and to Supplement the Record is GRANTED.

SO ORDERED this 30th day of May, 2006.

BY THE COURT:

TENA CAMPBELL
United States District Judge